**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

| | | |
|---|---|---|
| **CODY ALLEN VILLALOBOS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 3:18-01385** |
| | ) | |
| **WESTERN REGIONAL JAIL,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is PrimeCare Medical of West Virginia, Inc.'s ("PrimeCare") "Motion to Dismiss Complaint and Alternative Motion for Summary Judgment" (Document No. 11), filed on December 27, 2018. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4ᵗʰ Cir. 1975), that Plaintiff had the right to file a response to Defendant's Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendant in moving to dismiss. (Document No. 13.) Plaintiff failed to file a Response in Opposition. Having examined the record and considered the applicable law, the undersigned has concluded that PrimeCare's Motion (Document No. 11) should be granted and Plaintiff's claim against the Western Regional Jail should be dismissed.

**PROCEDURAL BACKGROUND**

On October 25, 2018, Plaintiff, acting *pro se,* filed his Motion to Proceed Without Prepayment of Fees and Complaint claiming entitlement to relief pursuant to Title 42 U.S.C. § 1983.[1] (Document Nos. 1 and 2.) In his Complaint, Plaintiff names the following as Defendants:

---

[1]   Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed

(1) Western Regional Jail; and (2) PrimeCare. (Document No. 2, p. 4.) Plaintiff appears to allege that Defendants acted with negligence and violated his constitutional rights under the Eighth Amendment by failing to provide him with appropriate and necessary medical care. (Id.) In the "Relief" section of the form Complaint, Plaintiff states as follows:

> I would like the Court to show the negligence of both parties involved. I would like to have my nose fixed properly. I also would like to be financially compensated for all the pain I have had to endure and all the pain in the future to have the nose fixed.

(Id., p. 5.) Plaintiff, however, left the "Statement of Claim" section of the form Complaint blank.

(Id., pp. 4 - 5.) By Order entered on November 6, 2018, United States Magistrate Judge Cheryl A. Eifert noted that Plaintiff failed to include any factual information in support of his Complaint and directed Plaintiff to file an Amended Complaint within 30 days. (Document No. 4.) On November 16, 2018, Plaintiff filed an Amendment to his Complaint including his "Statement of Claim." (Document No. 5.) Specifically, Plaintiff states as follows:

> On June 10, or around that date, I was cleaning my cell and I slipped and hit my nose on the metal shelf on my wall. I called out over our box to get help. I was bleeding bad. My nose was broken. The COs that came to help me was Vanhoose and Dennison. They finally showed up about six hours after the fact. They did take me up to medical. When I saw Nurse Josh, Josh tells me that there is no way to get x-rays that late so he ordered them for the next day. It took over 3 days to get me up to get x-rays. Once the x-rays were done, they assured me that a doctor would look at them and we would go from there. No one ever got back to me about what was broken or not. On the 3rd day of asking, they said the swelling was now too bad and would have to repeat the x-ray when the swelling subsides. It was almost one month before the second x-ray was done. No one ever got back with me on it. I asked every CO that came in my section to help, I never got the answer. I could tell my nose was broken due to the fact it was crooked and I could not breathe. Later, on or about end of October, I asked Josh the nurse about the x-rays and he told me that it in fact was broken but it was now too late to do anything about it. He was not for sure why they didn't do anything at the time, but it was now too late to do anything to fix it.

liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

(Id., pp. 2 - 3.)

By Order entered on November 28, 2018, Judge Eifert granted Plaintiff's Application to Proceed Without Prepayment of Fees and Costs, directed the Clerk to issue a summons for each Defendant, and directed the United States Marshals Service to serve the Summons and a copy of Plaintiff's Complaint and Amended Complaint upon each Defendant. (Document No. 6.) On December 27, 2018, PrimeCare filed its "Motion to Dismiss Complaint and Alternative Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 11 and 14.) PrimeCare argues that Plaintiff's Complaint should be dismissed based on the following: (1) "Plaintiff's claim should be dismissed for failure to state a claim upon which relief can be granted" (Document No. 14, pp. 3 – 4.); (2) "Plaintiff's Complaint should be dismissed because he has failed to exhaust his administrative remedies" (Id., pp. 4 – 7.); (3) "Plaintiff has failed to comply with the Notice of Claim and Screening Certificate of Merit Requirements of the MPLA" (Id., pp. 7 – 9.); (4) "Plaintiff's Complaint should be dismissed because PrimeCare is not a 'person' subject to suit under 42 U.S.C. § 1983" (Id., pp. 9 – 10.); (5) "Plaintiff's claims do not meet the legal threshold for a viable Eighth Amendment claim" (Id., pp. 10 – 13.); and (6) "Alternatively, PrimeCare should be awarded summary judgment" (Id., pp. 13 – 14.).

As Exhibits, PrimeCare attaches the following: (1) A copy of Plaintiff's pertinent medical records (Document Nos. 11-2 and 11-4.); (2) A copy of Plaintiff's Radiology Interpretation dated June 30, 2018 (Document No. 11-3.); and (3) A copy of Plaintiff's Radiology Interpretation dated July 10, 2018 (Document No. 11-5.). Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on January 2, 2019, advising him of the right to file a response to PrimeCare's "Motion to Dismiss Complaint and Alternative Motion for Summary Judgment." (Document No. 13.) Plaintiff, however, has failed to file a Response to PrimeCare's Motion.

3

On January 8, 2019, the Western Regional Jail filed its Answer asserting numerous defenses to Plaintiff's Complaint and Amended Complaint. (Document No. 15, pp. 1 - 4.) Among the numerous defenses, Western Regional Jail argues that it is not a "person" subject to suit under 42 U.S.C. § 1983 and it is entitled to immunity. (Id.) The Western Regional Jail further asserts a Cross-claim against PrimeCare. (Id., pp. 5 – 10.) PrimeCare filed its Answer to the Western Regional Jail's Cross-claim on February 5, 2019. (Document No. 21.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief." Id. at 556 U.S. at 679, 129 S.Ct. at 1950. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct.

285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978). Liberal construction, however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, at * 3 (N.D.W.Va. 2007)(citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir.1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va. Legal Aide Society, Inc., 807 F.3d 619 (4th Cir. 2015).

### **Summary Judgment**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts

in the light most favorable to the non-moving party. <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. <u>Celotex</u>, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## ANALYSIS

1.  **Section 1983 Claim:**

    A.    **Failure to Exhaust.**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[2] <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); <u>Porter v. Nussle</u>, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); <u>Booth v. Churner</u>, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under

---

[2] Title 42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[A] court may not excuse a failure to exhaust" because the PLRA's mandatory exhaustion scheme "foreclose[es] judicial discretion." Ross v. Blake, ___ U.S. ___, 136 S.Ct. 1850, 1856-57, 195 L.Ed.2d 117 (2016)("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account."). But the plain language of the statute requires that only "available" administrative remedies be exhausted. Id. at 1855("A prisoner need not exhaust remedies if they are not 'available.'"); also see Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a

complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005), *abrogated on other grounds by* Custis v. Davis, 851 F.3d 358 (4th Cir. 2017). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921(Failure to exhaust is an affirmative defense that a defendant must generally plead and prove); also see Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to

8

exhaust is an affirmative defense that the defendants have the burden of pleading and proving."
(Citations omitted)) The Court is not precluded, however, from considering at the outset whether
an inmate has exhausted administrative remedies. "A court may sua sponte dismiss a complaint
when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his
administrative remedies." Custis v. Davis, 851 F.3d. 358, 361 (4th Cir. 2017); also see Banks v.
Marquez, 694 Fed. Appx. 159 (4th Cir. 2017)(finding no error in the district court's decision to sua
sponte dismiss petitioner's petition where petitioner explicitly admitted in his petition that he failed
to exhaust his administrative remedies).

The Western Regional Jail, where Plaintiff was incarcerated at the time of the facts giving
rise to this civil action, is a facility operated by the West Virginia Regional Jail and Correctional
Facility Authority ("WVRJCFA"), which has a grievance procedure that is outlined in a handbook
of Inmate Rules and Procedures that is distributed to each inmate. The United States District Court
for the Northern District of West Virginia has summarized the WVRJCFA's grievance process as
follows:

> Under this procedure, inmates must first submit a grievance to the Administrator of
> the facility in which they are confined. Upon receipt of the grievance, the
> Administrator may reject the grievance if it appears on its face to have been filed
> in bad faith, or if other administrative procedures exist that have not been utilized.
> If the grievance is rejected, the Administrator must advise the inmate of the
> rejection. If the grievance is not rejected, the Administrator may assign a staff
> member to investigate the complaint. Such staff is then required to submit a written
> report within forty-eight (48) hours. Within two days of receipt of the written report,
> the Administrator must provide a written decision which identifies the action taken,
> the reasons for the action, and the procedures that must be followed to properly
> appeal the decision. If the Administrator's response is unfavorable, the inmate may
> appeal to the Chief of Operation within five days of the receipt of the
> Administrator's decision. Upon receipt of an appeal, the Chief of Operations must
> immediately direct the Administrator to forward copies of all information relating
> to the inmate's grievance within two business days. The Chief of Operations may
> direct an investigation of the report be conducted and a written report be submitted
> within 15 days. Within 10 days of receiving all of the information related to the
> grievance, the Chief of Operations must provide a written decision which identifies

the corrective action taken or the reasons for denying the grievance. If the Chief of Operations' response is unfavorable, the inmate may appeal to the Office of the Executive Director within five days of receipt of the Chief of Operations' response. To do so, the inmate must mail to the Executive Director, copies of the original complaint and all of the responses thereto. The Office of the Executive Director must respond to an inmate's appeal within 10 days of receiving all the information. Unless the inmate has been notified of an extension of time for a response, the inmate may move to the next stage of the grievance process if the inmate does not receive a response at the expiration of the time limit at any stage of the process. The grievance process must be concluded within 60 days, inclusive of any extensions.

Chase v. Trent, 2012 WL 5845361, at * 4 (N.D.W.Va. Oct. 16, 2012)(Kaull, M.J.), report and recommendation adopted, 2012 WL 5845219 (N.D.W.Va. Nov. 19, 2012)(Keeley, J.).

In its Motion, PrimeCare argues that "Plaintiff's Complaint should be dismissed because he has failed to exhaust his administrative remedies." (Document No. 11 and Document No. 14, pp. 4 – 7.) PrimeCare contends that "the failure to exhaust administrative remedies is apparent from the face of the Complaint." (Document No. 14, pp. 6 – 7.) In his Complaint, Plaintiff acknowledges that he did not fully exhaust his available administrative remedies. (Document No. 2, p. 3.) Plaintiff states that he presented facts relating to his Complaint in the state prisoner grievance procedure by filing "a grievance with the jail and medical [but] they didn't even respond to them." (Id., p. 3.) Thus, it is apparent from the face of the Complaint that Plaintiff failed to fully exhaust his administrative remedies prior to filing his Complaint and Amended Complaint. See Custis, 851 F.3d. at 361; Banks, 694 Fed. Appx. at 160. As stated above, an inmate must first submit a grievance to the Administrator of the facility in which he is confined. Upon receipt of the grievance, the Administrator may assign a staff member to investigate the complaint and that staff member is required to submit a written report within 48 hours. Within two days of receipt of the written report, the Administrator must provide the inmate with a written decision. If the inmate does not receive a response at the expiration of the time limit at any stage of the process, the inmate may move to the next stage of the grievance process. In the instant case, it is clear from the face

10

of Plaintiff's Complaint that he failed to consider any absence of a response as a denial and proceed to the next level. Additionally, there is no indication or allegation by Plaintiff that the administrative remedy process was unavailable. Plaintiff's Complaint reveals that Plaintiff decided to forego the administrative remedy process after he did not receive a timely response to his initial grievance. The undersigned, therefore, respectfully recommends that Plaintiff's Complaint and Amended Complaint be dismissed in view of his failure to exhaust his administrative remedies pursuant to the PLRA. Notwithstanding the foregoing, the undersigned will briefly consider Plaintiff's Eighth Amendment claim.

**B.    Eighth Amendment.**

In its Motion, PrimeCare first argues that "Plaintiff's Complaint should be dismissed because PrimeCare is not a 'person' subject to suit under 42 U.S.C. § 1983." (Document No. 11 and Document No. 14, pp. 9 – 10.) Citing <u>Little v. Tygarts Valley Regional Jail</u>, 2013 WL 57447800 (N.D.W.Va. 2013)[3], PrimeCare argues that it is not a "person" for purpose of Section 1983 and is not a proper defendant in a case filed by an inmate. (<u>Id.</u>) PrimeCare concludes that because it "is not a person subject to suit under 42 U.S.C. § 1983 and because the Plaintiff has not pled any allegations against it involving policies or customs of deliberate indifference, all claims against it in this matter should be dismissed pursuant to Rule 12(b)(6)." (<u>Id.</u>) Second, PrimeCare argues that "Plaintiff's claims do not meet the legal threshold for a viable Eighth Amendment claim." (<u>Id.</u>, p. 10 – 13.) PrimeCare contends "Plaintiff's diagnosis of a nondisplaced fractured nose is not an objectively serious condition sufficient to warrant constitutional protection. (<u>Id.</u>, p.

---

[3] In <u>Little</u>, the Northern District dismissed PrimeCare after determining that PrimeCare was "not a 'person' for purposes of 42 U.S.C. § 1983, and there [were] no allegations against it involving policies or customs of deliberate inference."

12 - 13.) PrimeCare then argues that even assuming such was a serious condition, there is no evidence that PrimeCare was deliberately indifferent to Plaintiff's need for treatment. (Id., p. 13.)

Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See also Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'")(quoting Hudson v. Palmer, 468 U.S. 517, 526 - 27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation). Sentenced prisoners are therefore constitutionally guaranteed adequate medical care under the Eighth Amendment.

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege and prove (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (citing Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must

prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") A medical need serious enough to give rise to an Eighth Amendment claim involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain. Id.; also see Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 *1st Cir. 1990)("A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."); Morales Felicciano v. Calderson Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004)("A constitutional violation is . . . established when government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medication attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort, or a threat to good health.") The Fourth Circuit stated the applicable standard in Miltier v. Beorn, 896 F.2d 848, 851 - 852 (4th Cir. 1990), as follows:

> To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. * * * Deliberate indifference may be demonstrated by either actual intent or reckless disregard. * * * A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a

13

reasonable person in the defendant's position. * * * Nevertheless, mere negligence or malpractice does not violate the eighth amendment. (Citations omitted)

Miltier v. Born, 896 F.2d 848, 851 - 52 (4th Cir. 1990)(*recognized in* Sharpe v. South Carolina Dept. of Corr., 621 Fed.Appx. 732, 733 (4th Cir. 2015) *as overruled in part on other grounds by* Farmer, 511 U.S. at 837, 114 S.Ct. 1970); See also Sosebee v. Murphy, 797 F.2d 179, 183 (4th Cir. 1986)(Facts indicating that guards were aware that inmate's condition had worsened and was life-threatening and intentionally ignored the situation and refused to seek medical assistance provided a reasonable basis for finding deliberate indifference to inmate's medical needs.); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978), cert. denied, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980)(Pretrial detainee's allegations of delay in treatment of his broken arm indicated a reasonable basis for inferring deliberate indifference to his serious medical needs.); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975)(Summary judgment for defendants affirmed where claim that inmate received constitutionally inadequate medical treatment involved a question of medical judgment not subject to judicial review.) Therefore, Plaintiff must first allege and eventually establish a "sufficiently serious" deprivation of adequate medical care and resulting "serious or significant physical or mental injury" in order to maintain and prevail upon his Eighth Amendment claim. Second, to establish the subjective component of deliberate indifference, Plaintiff must allege and prove each individual defendant's consciousness of the risk of harm to him. See Farmer, *supra*, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish that each individual Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, *supra*, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that each individual Defendant was

aware that he was receiving constitutionally inadequate medical care and disregarded the serious physical consequences.

PrimeCare is a contracted medical provider of the West Virginia Regional Jail and Correctional Facility Authority, which provides health care services to inmates in West Virginia's regional jails. West v. Atkins, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1998)(A private entity that contracts with the State to provide medical services acts "under color of state law."); also see Monell v. Dep't of Soc. Services, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)(A corporation acting under color of State law can be held liable under Section 1983 only for unconstitutional policies and practices.); Motto v. Correctional Medical Services, 2007 WL 2897854 (S.D.W.Va. Sept. 27, 2007). Since PrimeCare is a contracted medical provider for a state agency, the deliberate indifference standard is applicable to the conduct of PrimeCare and its employees. Mullins v. Prime Care Medical, Inc., 2014 WL 1260378, * 9 (S.D.W.Va. March 27, 2014)(J. Johnston); also see Edwards v. State, 2002 WL 34364404, * 12 (S.D.W.Va. March 29, 2002)(J. Goodwin)("To state a case against PrimeCare, [plaintiff] must show that a policy or custom or ratification of a policy or custom and procedure by PrimeCare caused a constitutional violation."); Kinder v. PrimeCare Medical, Inc., 2015 WL 1276748, *9 (S.D.W.Va. March 19, 2015). "[A] private corporation is liable under § 1983 *only* when the official policy or custom of the corporation causes the alleged deprivation of federal rights." Austin v. Paramount Parks, Inc., 195 F.3d 715, 728 (4th Cir. 1999)(emphasis in original). A private corporation, however, cannot be held liable under the doctrine of *respondeat superior* for the individual actions of its employees. Id. at 727; see also Johnson v. Hamilton, 452 F.3d 967, 973 (8th Cir. 2006). To succeed, Plaintiff must show that the official charged acted personally in the deprivation of plaintiff's rights. In the instant case, liberally construing Plaintiff's Complaint and Amended Complaint, Plaintiff fails to

assert any allegation concerning a policy or custom with regard to the conduct of PrimeCare. Accordingly, the undersigned respectfully recommend that the District Court find that Plaintiff has failed to state a plausible Eighth Amendment claim against PrimeCare.

Although Plaintiff has not named individual PrimeCare defendants, the undersigned will briefly consider the claim to the extent such is asserted against medical staff. As stated above, Plaintiff must prove that he was deprived of a basic human need that was objectively sufficiently serious. A medical need serious enough to give rise to an Eighth Amendment claim involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain. In the instant case, there is no allegation that the nondisplaced fracture to Plaintiff's nose placed Plaintiff at a substantial risk of serious harm or that it constituted a condition that the lack of treatment caused continuous severe pain. Although Plaintiff's condition obviously caused him some pain, this does not establish a serious medical condition. Several courts have specifically considered and rejected the claim that a broken nose constitutes a serious medical condition. See Burt v. Tarpley, 2017 WL 1397953, * 2 (E.D.Va. April 17, 2017)("[I]t is questionable that a broken nose is a sufficiently serious condition to warrant constitutional protection."); Thomas v. Commissioner Alabama Dept. of Corrections, 2016 WL 2962889, * 8 (N.D.Ala. Jan. 26, 2016)(finding plaintiff's desire for surgery to correct any facial deformity resulting from a broken nose for aesthetic purposes and to correct deformity affecting plaintiff's speech and ability to breathe from his right nostril was not a serious medical need); Gibson v. Borough of West Chester, 2004 WL 203175, * 7 (E.D.Pa. Jan. 12, 2004)(finding that plaintiff was not suffering physical distress as to require emergency medical care after being punched in the face and sustaining a broken and bloody nose); Kaup v. DeTella, 1999 WL 286288, * 4 (N.D.Ill. 1999)(finding that

16

plaintiff failed to identify a serious medical need where he alleged only a broken nose and chipped teeth); ); but see Aldridge v. Montogomery, 753 F.2d 970, 972-73 (11th Cir. 1985)(finding that a cut over an inmate's eye that was bleeding profusely for two and a half hours was a serious medical need). Based on the foregoing, the undersigned finds that Plaintiff cannot satisfy the objective standard because Plaintiff has not alleged a sufficiently serious medical condition.

Even assuming a nondisplaced nose fracture constitutes a serious medical condition, Plaintiff cannot establish deliberate indifference. To satisfy the subjective component, Plaintiff must allege each Defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff alleges that medical staff acted with deliberate indifference in failing to provide appropriate and timely medical treatment concerning his fractured nose. Specifically, Plaintiff complains that medical staff delayed conducting x-rays and failed to provide him with surgery to correct the fracture. Plaintiff alleges that he suffered the injury to his nose on or about June 10, 2018,[4] and medical staff waited three days before conducting an x-ray. The undisputed medical record reveals that x-rays were conducted on June 30, 2018 and July 10, 2018. The initial x-ray conducted on June 30, 2018, revealed the following: "nasal bone irregularity is visualized, the nasal bone fracture cannot be excluded," "no bony erosion or destruction," and "soft tissues are unremarkable without radiopaque foreign body." (Document No. 11-3.) Medical staff scheduled a follow-up appointment with Plaintiff for July 2, 2018. (Document Nos. 11-2 and 11-3.) On July 2, 2018, Plaintiff was examined by medical staff and it was noted that Plaintiff's "nose appears straight at this time [with] full air movement both nostrils." (Document No. 11-4.) Medical staff ordered a second x-ray and noted that no further treatment was necessary if the

---

[4] The medical records reveal that Plaintiff reported to the medical until complaining of the injury to his nose on June 29, 2018. (Document No. 11-2.)

fracture was nondisplaced. (Id.) The second x-ray was conducted on July 10, 2018, revealing the following: "There is acute nondisplaced fracture bridge of nasal bone. Paranasal sinuses are clear. The bony mineralization is normal. Soft tissues are unremarkable." (Document No. 11-5.) Based upon the foregoing, Plaintiff cannot satisfy the subjective component. The foregoing does not exhibit that medical staff knew of, and disregarded, Plaintiff's need for medical treatment for his nondisplaced nose fracture. Thus, the Court finds that medical staff did not act with deliberate indifference. The undisputed medical record reveals that medical staff evaluated Plaintiff following each sick-call request and ordered x-rays. There is no indication that the nondisplaced nose fracture was causing Plaintiff to suffer continuous severe pain or other symptoms requiring treatment, which medical staff knew of and disregarded. See Riles v. Buchanan, 656 Fed.Appx. 557 (2nd Cir. 2016)(finding inmate's claim that his broken nose was not promptly treated resulting in a loss of taste and smell was insufficient to establish deliberate indifference because such injuries ordinarily heal without medical intervention); VanCourt v. Lehman, 137 Fed.Appx 948, 950 (9Th Cir. 2005)(one day delay in receiving pain medication for head injuries and a broken nose suffered in an attack did not demonstrate deliberate indifference to a serious medical need); Thomas v. Commissioner Alabama Dept. of Corrections, 2016 WL 2962889, * 8 (N.D.Ala. Jan. 26, 2016)(finding plaintiff's desire for surgery to correct any facial deformity resulting from a broken nose for aesthetic purposes and to correct to deformity affecting plaintiff's speech and ability to breathe from his right nostril was not a serious medical need). Thus, the medical records reveal that medical staff adequately evaluated and treated Plaintiff's nondisplaced nose fracture. Plaintiff appears to simply disagree with the appropriate course of treatment. Specifically, Plaintiff claims that x-rays should have been performed sooner and surgery was necessary to correct the deformity of his nose. An inmate's disagreement with his medical care or the course of treatment

generally will not constitute a sufficient basis for a constitutional claim. <u>Wright v. Collins</u>, 766 F.2d 841, 849 (4th Cir. 1985). "[T]he Fourth Circuit has observed that an inmate's treatment may be limited to what is medically necessary as opposed to 'that which may be considered merely desirable' to the inmate." <u>Malcomb v. Raja</u>, 2010 WL 3812354, at * 1 - 2 (S.D.W.Va. Sept. 22, 2010)(quoting <u>Bowring v. Godwin</u>, 551 F.2d 44, 47-48 (4th Cir. 1977)(finding that plaintiff was provided medication for his pain and "Defendants' decision to provide plaintiff with one medication over another does not give rise to a constitutional violation."). The undisputed medical record reveals that Plaintiff suffered from a nondisplaced nose fracture, which did not require surgical correction. At most, medical staff may have been negligent in the alleged delay in conducting the initial x-ray of Plaintiff's nose following the injury. It is well recognized that "negligent medical diagnoses or treatment, without more, do not constitute deliberate indifference." <u>Webb v. Hamidullah</u>, 281 Fed.Appx. 159, 166 (4th Cir. 2008); <u>also see</u> <u>Sosebee v. Murphy</u>, 797 F.2d 179, 181 (4th Cir. 1986)("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). Accordingly, the undersigned finds that medical staff did not act with deliberate indifference in providing medical treatment for Plaintiff's condition.

**2.**   **<u>Medical Negligence</u>:**

Finally, PrimeCare argues that to the extent Plaintiff is asserting a medical malpractice claim, such a claim should be dismissed because Plaintiff failed to comply with the prerequisites of the MPLA. (Document No. 11 and Document No. 14, pp. 7 – 9.) Specifically, PrimeCare states that Plaintiff failed to comply with the Notice of Claim and Screening Certificate of Merit requirements of the MPLA. (<u>Id.</u>)

Under West Virginia law, a plaintiff must satisfy certain prerequisites prior to filing suit

against a health care provider. Specifically, a plaintiff must serve each defendant health care provider with a notice of claim with an attached screening certificate of merit executed under oath by a health care provider qualified as an expert under the West Virginia Rules of Evidence at least thirty (30) days prior to filing suit. W. Va. Code § 55-7B-6. If a plaintiff has insufficient time to obtain a screening certificate of merit prior to the expiration of the applicable statute of limitations, the plaintiff must comply with the provisions of W. Va. Code § 55-7B-6(b) "except that the claimant or his or her counsel shall furnish the health care provider with a statement of intent to provide a screening certificate of merit within sixty days of the date the health care provider receives the notice of claim." W. Va. Code 55-7B-6(d). Compliance with West Virginia Code § 55-7B-6 is mandatory prior to filing suit in federal court. Stanley v. United States, 321 F.Supp.2d 805, 806-07 (N.D.W.Va. 2004); also see Starns v. United States, 923 F.2d 34 (4th Cir. 1991)(holding that Virginia's medical malpractice liability cap applies to claims brought against the United States under the FTCA). West Virginia Code § 55-7B-6(c), however, provides that no screening certificate of merit is necessary where "the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care." W. Va. Code § 55-7B-6(c). If a plaintiff proceeds under this subsection, the Plaintiff must "file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit. Id.

The Court notes that Plaintiff has filed no Response disputing that he failed to comply with the prerequisites of the MPLA. Additionally, there is no indication that Plaintiff has complied with the prerequisites of the MPLA. Finally, Plaintiff does not claim that he has filed a statement in lieu of a screening certificate of merit because his cause of action is based upon a well established legal theory of liability. To the extent Plaintiff is asserting a medical negligence claim the undersigned

respectfully recommends that the PrimeCare's "Motion to Dismiss Complaint and Alternative Motion for Summary Judgment" (Document No. 11) be granted.

**3.    <u>Western Regional Jail as a Defendant</u>:**

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. <u>Denton v. Hernandez</u>, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." <u>Id.</u>, 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." <u>Id.</u>, 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. With these standards in mind, the Court will assess Plaintiff's allegations against the Western Regional Jail in view of applicable law.

It is well recognized that a Section 1983 claim must be directed at a "person." <u>See Preval v. Reno</u>, 203 F.3d 821 (4th Cir. 2000)(unpublished)(finding that the Piedmont Regional Jail is not a "person" under Section 1983). In <u>Will v. Michigan Dept. of State Police</u>, the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983". <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 66, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989). The holding in <u>Will</u> applies not only to suits against the State, but also to suits against

"public entities and political subdivisions" that are an "arm or alter ego" of the State. Maryland Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 260 (4th Cir. 2005)(citation omitted). It is well recognized that WVDOC is an arm of the State and is not a "person" within the meaning of Section 1983. See Rauch v. West Virginia Divison of Corrections, 2014 WL 3732123 (S.D.W.Va. July 25, 2014)(J. Copenhaver)(WVDOC is not a "person" for purpose of Section 1983); Berry v. Rubenstein, 2008 WL 1899907, * 2 (S.D.W.Va. April 25, 2008)(J. Faber)("WVDOC is an arm of the state and is therefore immune from suit under the Eleventh Amendment"); also see Lewis v. Western Regional Jail, 2012 WL 3670393, * 5 (S.D.W.Va. July 24, 2012)(finding that the Western Regional Jail was not a "person" subject to suit under Section 1983); Webb v. Parsons, 2011 WL 2076419 (S.D.W.Va. May 6, 2011)(finding that the West Virginia Regional Jail Authority, an agency of the State of West Virginia, is immune from suit under the Eleventh Amendment); Roach v. Burch, 825 F.Supp. 116, 117 (N.D.W.Va. 1993)(stating that the West Virginia Regional Jail Authority is not a "person" under Section 1983). Furthermore, pursuant to the Eleventh Amendment, the power of the federal judiciary does not extend to suits by a citizen against his or her own state. Hans v. Louisiana, 134 U.S. 1, 9, 10 S.Ct. 504, 33 L.Ed. 842 (1980); also see Will, supra, 491 U.S. at 66, 109 S.Ct. at 2309 (Suits against a state or state agencies for monetary damages are barred by the Eleventh Amendment to the United States Constitution); Kinder v. PrimeCare Med., Inc., 2015 WL 1276748, * 2 (S.D.W.Va. March 19, 2015)(dismissing the Western Regional Jail based on Eleventh Amendment grounds). Accordingly, the undersigned finds that the Western Regional Jail is not a proper defendant in the above action. It is therefore respectfully recommended that Plaintiff's claims against the Western Regional Jail be dismissed.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court

confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** PrimeCare's "Motion to Dismiss Complaint and Alternative Motion for Summary Judgment" (Document No. 11), **DISMISS** Plaintiff's claim against the Western Regional Jail, and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Chambers and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: May 24, 2019.

Omar J. Aboulhosn
United States Magistrate Judge

23